Wayne County Land, a West Virginia Corporation, entered into a lease (the "Vantage Lease") with Vantage Mining Company ("Vantage") on December 1, 1989. The Vantage Lease was recorded in both Wayne and Mingo Counties. Pursuant to the Vantage Lease, Vantage obtained the right to mine coal owned by Wayne County Land in an area specifically known as the Victory Mine. In return, Vantage would make two forms of royalty payments to Wayne County Land: a Minimum Royalty and a Tonnage Royalty. The Minimum Royalty was a guaranteed annual payment of $140,000 which was payable in advance on or before the first day of each Vantage Lease year. For each year that these payments were made in advance, Vantage had the right to recoup the amounts against the Tonnage Royalties which would be due and payable to Wayne County Land during the Vantage Lease Year. Additionally, under the Vantage Lease, Vantage could recoup excess Minimum Royalty payments against Tonnage Royalties payable in subsequent lease years in certain circumstances.

In March of 2011, disputes arose between Wayne County Land and Vantage regarding the Vantage Lease and payments allegedly owed by Vantage to Wayne County Land. To resolve the issues, the parties entered into a settlement agreement (the "Vantage Settlement Agreement"). In the Vantage Settlement Agreement, Vantage was to pay Wayne County Land certain recoupable sums for certain coal over time according to an agreed-upon payment schedule. These recoupable settlement payments could also be recouped by Vantage under certain circumstances.

On December 30, 2013, Producers Land, LLC ("Producers Land") entered into a Purchase and Sale Agreement with Vantage (the "Producers Land PSA") and purchased Vantage's leasehold interests in certain coal reserves and certain other assets known as the Victory Mine assets. Contained in the Producers Land PSA was the purchase of the Vantage Lease, 26 other coal leases,

recoupable royalty credits related to all 27 of the purchased leases, and the recoupable settlement payments under the Vantage Settlement Agreement. As of the date of closing on the Producers Land PSA, the recoupable royalty credit on the Vantage Lease was $700,000 and the recoupable settlement payment was $2,313,484. In total, at the time of the purchase, Producers Land was transferred a prepaid recoupable balance of $3,014,484. At that point, Producers Land began mining and recouping a small portion of the recoupable royalty payments it had purchased from Vantage.

In March 2016, Wayne County Land issued a Notice and Declaration of Forfeiture and Termination to Producer's Land with respect to the Vantage Lease on the grounds that Producer's Land had failed to pay certain minimum royalty payments, taxes, and sums allegedly due for lost coal. Following the forfeiture and termination of the Vantage Lease, Wayne County Land (i) refused to permit and actively prevented further mining of coal, and (ii) retained all the then-remaining recoupable royalty payments, including the Recoupable Settlement Payments. The Plan Administrator posits that this provided a windfall to Wayne County Land because not only was Wayne County Land able to retain all the unmined coal at the relevant mines, but it also was able to keep funds in excess of $3,000,000 in recoupable royalty and settlement payments.

Producers Land filed a voluntary Chapter 11 bankruptcy petition on August 31, 2016 alongside sixteen other debtors which comprised a coal enterprise under the control of Dennis Johnson. The cases were subsequently jointly administered. One of the other coal enterprise entities was Sabbatical, Inc. ("Sabbatical"). On March 9, 2020, this Court confirmed a Chapter 11 Plan in the Sabbatical case, and Mr. Bernstein was appointed Plan Administrator. Pursuant to language contained in the Plan and in the Asset Sale and Purchase Agreement ("ASPA") intertwined with the Plan, Mr. Bernstein asserts that he has stepped into the shoes of each of the

coal enterprise debtors and thus has the right to assert any and all claims of Producers Land. Wayne County Land has not disputed this assertion.

The Plan Administrator puts forth several counts in his Complaint: (I) Declaratory Judgment – Quiet Title; (II) Turnover (Bankruptcy Code §§ 542-43); and (III) Breach of Contract. Under Count I, he seeks a declaration that Producers Land, and therefore Sabbatical, is the rightful owner of all leasehold mining rights to the unmined coal at the Victory Mine and that Sabbatical may liquidate the leasehold mining rights for the benefit of creditors. For support, the Plan Administrator looks to equitable doctrines; specifically, he asserts that Vantage, and then Producers Land via the Producers Land APA, acquired valid legal and equitable title to unmined coal in the form of a real estate interest under West Virginia law. He also points to West Virginia law which provides that forfeiture provisions in mineral leases are not enforceable in equity when compensation can be made in the form of money damages to render the lessor whole, which applies to the situation at hand because the forfeiture and termination notice was based purely on economic defaults.

Under Count II, the Plan Administrator asks this Court to direct Wayne County Land to restore Producers Land's mining rights to the unmined coal at the Victory Mine and to require Wayne County Land to account for and turn over all funds received by Vantage in the form of recoupable royalty payments and/or recoupable settlement payments. Under 11 U.S.C. §§ 542 and 543, the Plan Administrator asserts that any entity in possession of property that the Trustee may sell, use, or lease, must be turned over to the Trustee. He posits that Wayne County Land is in possession of property owned by Producers Land (and therefore Sabbatical) and that the property in question must be turned over pursuant to the Bankruptcy Code.

Finally, under Count III, the Plan Administrator argues that Wayne County Land has breached a contract by improperly forfeiting and terminating the Vantage Lease for mere alleged economic defaults.

In its Motion, Wayne County Land vehemently argues that the Vantage Lease was properly terminated pre-petition and did not become an asset of the Estate. In the alternative, Wayne County Land asserts the Vantage Lease was not timely assumed and the Chapter 11 Plan would have expressly rejected the lease even if it had been in effect at Confirmation. Furthermore, Wayne County Land posits that the recoupable payments under the Vantage Lease may not be recovered in any manner other than as a credit against production royalties and, therefore, may be forfeited. Finally, Wayne County Land argues that the Plan Administrator has no right to seek a refund of the recoupable minimum payments because Vantage expressly retained all rights to those payments other than the right to an accounting entry. Wayne County Land seeks dismissal of the Complaint with prejudice.

## II.

**A.     Governing Standard**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

5

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*, 550 U.S. at 562-63); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 558. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *McCleary-Evans*, 780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "plead facts sufficient to establish a prima facie case . . . to survive a motion to dismiss, but . . . the more stringent pleading standard established in *Iqbal* and *Twombly* applies." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (citing *Twombly*, 550 U.S. at 569-70). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of

6

misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678-79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "'accept as true all of the factual allegations contained in the complaint . . . .'" *Erickson*, 551 U.S. at 94 (citing *Twombly*, 550 U.S. at 555); *see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The Court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Lest one lose the forest for the trees, it bears emphasizing that "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of th[e alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Woods*, 855 F.3d at 652 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

### III.

After reviewing the relevant pleadings and considering the parties' arguments, this Court finds that the Plan Administrator has met his burden under Federal Rule of Civil Procedure 12(b)(6), in that he has pled "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly,

**IT IS ORDERED** that Wayne County Land's Motion to Dismiss be, and is hereby, **DENIED WITHOUT PREJUDICE.** Wayne County Land is not prevented from advancing its arguments anew at the summary judgment stage by appropriate motion.